UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| LUKE R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1758-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Luke R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 11. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion (ECF No. 10) is **GRANTED**, the Commissioner's motion (ECF No. 11) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on February 28, 2014, alleging disability beginning January 1, 2013 (the disability onset date), primarily due to the residual effects of a traumatic brain injury ("TBI") that occurred when he was five years old, vertigo, and mental disorders. Transcript ("Tr.") 20, 152-53. Plaintiff's claim was denied initially on April 21, 2014,

after which he requested an administrative hearing.[1] Tr. 20. On June 24, 2016, Administrative Law

Judge Mark Naggi ("ALJ Naggi") conducted a video hearing from Kansas City, Missouri. *Id*. Tr.

20, 33-43. Plaintiff did not appear at the hearing which was held in Buffalo, New York, but was

represented by Kelly Laga, an attorney. Tr. 20. Stella Doering, an impartial vocational expert

("VE"), also appeared and testified at the hearing. *Id*.

ALJ Naggi issued an unfavorable decision on September 9, 2016, finding that Plaintiff was

not disabled. Tr. 20-28. On June 1, 2017, the Appeals Council denied Plaintiff's request for further

review. Tr. 1-6. ALJ Naggi's September 9, 2016 decision thus became the "final decision" of the

Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Thereafter, Plaintiff filed a claim in the United Stated District Court for the Western

District of New York. Tr. 478-83. On June 12, 2019, the case was remanded for further

proceedings because ALJ Naggi "fail[ed] to recontact Plaintiff's physicians or order a consultative

examination to obtain any medical opinion as to [Plaintiff's] functional capacity." Tr. 482. On

June 13, 2019, the Appeals Council remanded Plaintiff's case for another hearing and directed the

Administrative Law Judge to obtain an assessment of Plaintiff's functional capacity to: perform

work activity from a medical source; consolidate the claimant's subsequent applications with the

current application; and issue a decision on the consolidated claims. Tr. 384, 478-484, 502-06.

Thereafter, on June 24, 2020, Administrative Law Judge Stephan Bell (the "ALJ") held a

telephone hearing in Buffalo, New York.[2] Tr. 384, 408-31. Plaintiff appeared and testified at the

hearing and was represented by Alexander Kyler, an attorney. Tr. 384. VE Angela Eskandar also

appeared and testified at the hearing. *Id*. On September 15, 2020, the ALJ issued an unfavorable

---

[1] After the denial of his initial claim, Plaintiff protectively filed subsequent applications for disability benefits on August 9, 2017 and November 9, 2018. Tr. 384.

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 384.

decision finding that Plaintiff was not disabled. Tr. 384-97. Thereafter, Plaintiff appealed the decision directly to this Court.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational

requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her September 15, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since February 28, 2014, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: opioid dependence, cannabis abuse, sedative/hypnotic/anxiolytic abuse, attention deficit-hyperactivity disorder, social anxiety, major depressive disorder, and vertigo (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can work at all exertional levels. He can occasionally work at unprotected heights and around moving mechanical parts. He is able to perform simple, routine tasks and make simple work-related decisions. He can occasionally interact with supervisors and coworkers. He can never interact with the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 3, 1991 and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 28, 2014, the date the application was filed (20 CFR 416.920(g)).

Tr. 384-96.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on February 28, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 397.

## ANALYSIS

Plaintiff asserts two points of error. *See* ECF No. 9-1 at 1, 16-24. Plaintiff first argues that the ALJ improperly evaluated and explained medical opinion evidence and other evidence. *See id*. at 17-25. Further, argues Plaintiff, the ALJ cherry-picked evidence and improperly based the RFC

conclusions on lay opinion. *See id*. Next, Plaintiff argues that the ALJ failed to properly describe and account for Plaintiff's limiting effects, such as episodic symptoms like headaches, dizziness, imbalance, seizures, chronic pain, fatigue, and panic attacks, in the RFC finding. *See id*. at 25-30. Accordingly, argues Plaintiff, the ALJ's physical RFC determination was not supported by substantial evidence. *See id*. at 16-30.

The Commissioner argues in response that the ALJ properly considered the medical opinions and explained her rationale for the weights assigned. *See* ECF No. 11-1 at 12-17. Further, argues the Commissioner, the ALJ considered Plaintiff's subjective complaints of "episodic symptoms" but reasonably found they were not entirely consistent with the medical evidence and other evidence in the record, and therefore, the record did not credibly support greater RFC limitations. *See id*. at 18-20. Accordingly, the Commissioner argues that the ALJ properly evaluated the evidence before her, and the ALJ's RFC finding was supported by substantial evidence. *See id*. at 17-20.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's RFC finding is not supported by substantial evidence. Specifically, the ALJ did not adequately address Plaintiff's history of vertigo or sufficiently explain her rationale for discounting medical opinions that assessed limitations arising from Plaintiff's vertigo, including balancing, using stairs, and

operating machinery or motor vehicles. Accordingly, the Court finds that remand for further administrative proceedings on this point is warranted.

As noted above, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations: able to work at all exertional levels; occasionally work at unprotected heights and around moving mechanical parts; able to perform simple, routine tasks and make simple work-related decisions; and he can occasionally interact with supervisors and coworkers; he can never interact with the public. Tr. 388-89. Upon review of the entire record, including the multiple medical opinions on which the ALJ relied, it is not clear to the Court how the ALJ determined that Plaintiff is capable of this RFC.

In reaching a decision, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that '. . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). ALJ's are free to resolve conflicts in the evidentiary record, but while doing so, they must set forth the "crucial factors" with "sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Chalk v. Berryhill*, 2017 WL 4386811, *10 (W.D.N.Y. 2017) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). Such is not the case here. The opinion evidence considered by the ALJ is summarized below.

On March 12, 2019, state agency consultant T. Bruni, M.D. ("Dr. Bruni"), completed a written medical assessment on behalf of the Agency and found Plaintiff "markedly" limited to understand and remember detailed instructions; carry out detailed instructions; and "moderate" limitation to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions

from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with general public; accept instructions and respond appropriately to criticism from supervisors. Tr. 474-76. The ALJ accorded Dr. Bruni's opinions "great" weight. Tr. 393.

On April 5, 2019, state agency consultant H. Miller, M.D. ("Dr. Miller) completed a medical assessment and found, based on Plaintiff's history of seizures, vertigo, and status post TBI, that Plaintiff should never climb stairs/ropes/scaffolds; never balance; and avoid even moderate exposure to hazards. Tr. 472-74.

On June 26, 2019, state agency consultant D. Brauer, M.D. ("Dr. Brauer"), completed an assessment and affirmed Dr. Miller's April 5, 2019 assessment with never balance; and other limits. Tr. 472-74, 1116-18. The ALJ accorded Dr. Miller and Dr. Brauer's opinions "partial" weight. Tr. 393-97.

On June 24, 2019, state agency consultant K. Lieber-Diaz, Psy.D. ("Dr. Lieber-Diaz"), completed an assessment and opined that Plaintiff was not significantly limited in the ability to perform within a schedule, maintain attendance, be punctual, and moderately limited in the ability to complete a normal workday working at a consistent pace without interruptions from psychologically based symptoms. Tr. 496-97. Dr. Lieber-Diaz opined that the evidence of record showed that, while Plaintiff did not have significant limitation understanding and remembering detailed instructions, he had a moderate limitation carrying out detailed instructions and maintaining concentration. *Id*. Plaintiff had a moderate limitation working in coordination or proximity to others. Tr. 497. Dr. Lieber-Diaz noted moderate limitations in social interaction, including interacting with the public, accepting criticism, and working with others. *Id*. Dr. Lieber-Diaz also included adaptation limitation, including moderate limitation when responding

appropriately to changes in the work setting and setting realistic goals or making plans independently. Tr. 496-97.

The ALJ accorded Dr. Lieber-Diaz's opinion "partial" weight, noting that it varied from Dr. Bruni's opinion, finding no significant limitation in Plaintiff's ability to understand and remember, with an overall mild limitation in understand, remembering or applying information. Tr. 394, 491, 496. The ALJ also noted that Plaintiff's treatment records as a whole depicted moderate limitation due to substance abuse treatment, varying reports of behavioral issues, and inconsistent reports of medication compliance. Tr. 394. The ALJ noted that she gave Dr. Lieber-Diaz's opinion reduced weight due to the findings that Plaintiff had no significant limitation to understand or remember detailed instructions, which was inconsistent with Plaintiff's educational history and his history of TBI. Tr. 394.

The ALJ also considered the March 1, 2017 opinions of Shaden Alfallay, M.D. ("Dr. Alfallay"), and Hany Abdel Messeh, M.D. ("Dr. Messeh"), who treated Plaintiff in the Emergency Department ("ED") at Mercy Hospital of Buffalo after he suffered a seizure episode. Tr. 394, 926-28. The episode was witnessed by Plaintiff's girlfriend who reported that Plaintiff suddenly had a blank stare and started having tonic-clonic[3] seizures followed by 15-20 minutes of confusion; however, there was no loss of consciousness. Tr. 927. Upon discharge, Dr. Alfallay and Dr. Messeh advised Plaintiff to "not operate heavy machinery if he feels like he is going to have a seizure, if he is having any headaches, any loss of consciousness, any chest pain, any shortness of breath, any palpitations, any abdominal pain, any nausea, vomiting" Tr. 928. The ALJ gave this opinion "partial" weight because the doctors' "statement appear[ed] to be non-durational" and explained

---

[3] "Tonic" means stiffening, and "clonic" means rhythmical jerking. A tonic-clonic seizure is sometimes referred to as a convulsion or grand mal seizure. Epilepsy Foundation website, https://www.epilepsy.com/ what-is-epilepsy/seizure-types/tonic-clonic-seizures.

that the statement was given less weight based on Plaintiff's overall limitation level. Tr. 394. The ALJ further noted that Plaintiff had experienced only one hospitalization for a seizure; he was not diagnosed with epilepsy; and his condition was more closely aligned with vertigo, which had been occurring less and less. *Id*.

On February 28, 2019, psychiatric consultative examiner Christine Ransom, Ph.D. ("Dr. Ransom"), conducted a consultative exam and diagnosed substance dependence, in remission, attention-deficit disorder, currently mild and episodic, social anxiety, currently mild and episodic, and major depression disorder ("MDD"), currently in remission on medication; and medical conditions: vertigo and seizure disorder. Tr. 1067-71. The ALJ assigned Dr. Ransom's opinion "little" weight, noting that although her opinion was consistent with her observed examination findings, they were inconsistent with the evidence as a whole. Tr. 395. The ALJ explained that he found the opinions of Dr. Bruni to be more consistent with the overall evidence of record. *Id*.

On February 28, 2019, consultative medical examiner Raquel Benchoam-Ravid, M.D. ("Dr. Benchoam-Ravid"), conducted a consultative internal medicine exam. Tr. 1072-75. Dr. Benchoam-Ravid diagnosed status post traumatic brain injury, vertigo, petit mal-type seizures, and mental health disease, panic attacks and anxiety. Tr. 1075. Plaintiff's prognosis was fair. *Id*. Dr. Benchoam-Ravid opined that Plaintiff should avoid operating machinery or motor vehicle or being unprotected heights due to history of vertigo and seizures. *Id*. The ALJ accorded Dr. Benchoam-Ravid's "some" weight, noting that it was somewhat consistent with the evidence tending to show that Plaintiff has vertigo. Tr. 395. The ALJ also noted that Plaintiff's vertigo episodes were decreasing, and there had been only one reported hospitalization for a petit mal seizure. *Id*.

Finally, the ALJ considered but did not weigh the September 5, 2017 opinion of Recovery Support Specialist Sayeeda Daniels ("Ms. Daniels"). Tr. 394-95, 913-16. The ALJ noted that,

while Ms. Daniels' statements were not expressly functional limitations, they were considered in determining Plaintiff's RFC. *Id.*

Although the ALJ assigned various weights to these multiple opinions, her analysis failed to adequately explain conflicts between portions of some of the opinions (particularly those assigned greater weight) and the ultimate RFC finding. Tr. 388-95. For example, the ALJ accorded "great" weight to Dr. Bruni's opinion but failed to adequately explain and account for moderate limitations in maintaining schedule, complete workday without interruption, accepting instruction and criticism from supervisors assessed by Dr. Bruni. Tr. 393. *See* SSR 85-15. Thus, the ALJ indicated that Dr. Bruni's opinion was consistent with the record, but it contradicts the ALJ's RFC finding. Tr. 393. Furthermore, Dr. Bruni found that Plaintiff's limitations were based on psychiatric conditions, rather than on any evidence of substance abuse disorder or DAA (Drug Addiction or Alcoholism) (Tr. 477; *see* SSR 13-2p), but the ALJ nevertheless referenced Plaintiff's substance history in her analysis (Tr. 393), which tended to undermine Dr. Bruni's opinion and suggests that the ALJ may have based the RFC on her own lay interpretation of Dr. Bruni's findings.

Additionally, the ALJ did not properly explain how she accounted for Dr. Miller's, Dr. Brauer's, and Dr. Benchoam-Ravid's opinions in the RFC finding, despite according the opinions partial (Dr. Miller and Dr. Brauer) and some (Dr. Benchoam-Ravid) weight. Tr. 393-395. Based on Plaintiff's history of seizures, vertigo, and status post TBI, Dr. Miller and Dr. Brauer found that Plaintiff should never balance; use stairs, etc.; and avoid even moderate exposure to hazards. Tr. 472-74, 1116-18. Dr. Benchoam-Ravid diagnosed status post TBI, vertigo, petit mal-type seizures, and mental health disease, panic attacks and anxiety. Tr. 1075. She also found that Plaintiff should avoid operating machinery or motor vehicle or being unprotected heights due to history of vertigo

and seizures. *Id.* Thus, these medical opinions support that Plaintiff had balancing issues. Tr. 472-74, 1116-18. Furthermore, other evidence in the record shows that Plaintiff had persistent balancing issues that affected his ability to walk without falls/episodes and were exacerbated by stress and anxiety. Tr. 782-86, 831-38, 872-78, 889-912, 927, 956-60. Despite this evidence, Plaintiff's balancing issues were not adequately addressed by the ALJ, and there was no discussion in the RFC analysis regarding what is meant by limited balancing and the impact of balancing limitations on the remaining occupational base. *See* SSR 96-9p.[4]

Based on the foregoing, the Court remands this case so that the ALJ may address the deficiencies noted above. On remand, the ALJ. should thoroughly explain the findings related to the evidence of Plaintiff's balancing issues and vertigo, and the impact of such on Plaintiff's RFC.

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional issues. *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual

---

[4] Under "Postural Limitations," SSR 96-9p reads, "[i]n the SCO, 'balancing' means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base."

determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**<u>CONCLUSION</u>**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE